**UNITED STATES of America,**

v.

**James BUSH and Reva Finchum Bush, Defendants.**

Crim. A. No. 16384.

United States District Court
E. D. Tennessee, N. D.

Dec. 12, 1958.

Supplementary Opinion April 23, 1959.

John C. Crawford, Jr., U. S. Atty., John F. Dugger, James M. Meek, Asst. U. S. Attys., Knoxville, Tenn., for Govt.

Hobart F. Atkins, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

The Grand Jury, by indictment filed on March 24, 1958, charges in the first count that on or about the 4th day of June, 1958, in the jurisdiction of this Court, James Bush and Reva Finchum Bush possessed untax-paid whiskey in violation of Section 5008(b) of the Internal Revenue Code, 26 U.S.C.A. § 5008 (b).

In the second count of the indictment the Grand Jury charges that on or about the same date the defendants concealed distilled spirits contrary to Section 5632 of the Internal Revenue Code.

It is charged in the third count of the indictment that the defendants possessed distilled spirits on which the taxes had not been paid on or about June 13, 1958, in violation of Section 5008(b) of the Internal Revenue Code.

The fourth and last count of the indictment charges that the defendants concealed the distilled spirits mentioned in the third count in violation of Section 5632 of the Internal Revenue Code, 26 U.S.C.A. § 5632.

Defendants have filed a motion to suppress the evidence and to quash the indictment, which is based on seven grounds.

The first ground asserts that the government agents entered defendants' home without a search warrant, without invitation and by subterfuge.

The second and third grounds assert that the warrant was issued without probable cause. The fourth and fifth grounds assert that the facts set forth as probable cause for the issuance of the warrant were obtained by unlawful search and as a result of the government officers' trespassing on the defendants premises.

The sixth ground asserts that the facts represented to the Commissioner do not refer to any sworn deposition or testimony of any person other than the investigator of the Alcohol and Tobacco Tax Unit.

The seventh and final ground asserts that the indictment was returned upon evidence obtained as a result of an illegal search that was conducted in the home of the defendants. It is also asserted in this ground of the motion that the government officers returned to defendants' home subsequent to June 4th and did not obtain any additional information and that the warrant was not issued on the information obtained on June 4th until June 9th, and that probable cause did not exist on June 9th for the issuance of the warrant.

The proof heard today establishes the following facts: Willie Yates met Mr. Hahn, a government agent, on June 4, 1958, here in Knoxville in a restaurant that is operated in conjunction with a beer tavern. As a result of the conversation had with Yates on that date, the two men, along with a government informer whose name does not appear in this record, went to the home of the defendants in Sevier County, Tennessee. Pictures of this home are filed in the record as Exhibits 1, 2, 3 and 4. These pictures show that the home faces on one of the main highways of Sevier County, and that facing in the direction the government agent's car was travelling there is a driveway beside the home which leads to a garage back of the home. The government agent, along with Yates and the informer, pulled into defendants' driveway about 40 feet and stopped their car. At that place they observed Mr. Bush, who came near the car as the government agent and the informers alighted therefrom. At that point in the driveway, or in the yard of defendants, the four parties engaged in conversation.

Defendant Bush was advised that the purpose of the visit was to purchase whiskey. He told them he did not have any whiskey. Mrs. Bush appeared on the scene with a milk bucket after the men had talked to her husband for some little time. Mrs. Bush took the milk bucket and placed it on the porch or in the kitchen. Some of the testimony indicates that Mr. Bush left after the government agent and the other men had talked to his wife. The government agent stated that he remained with the crowd during the conversation and heard what took place.

A man named Delozier was at the tavern or went to the tavern with the government agent at the time Yates was first met. He introduced Yates to the government agent, but for some reason could not make the trip to the defendants' home.

Most of the conversation with Mrs. Bush was about the purchase of whiskey. Yates and the informer tried to impress upon her that they had been to her home before and that she knew that. Finally Mrs. Bush, the government agent and the two men went into the kitchen. Soon after arriving in the kitchen Mrs. Bush took from the cabinet two half-gallon jars, one containing about a quart of white whiskey and the other about a quart of aged or charred whiskey. Mrs. Bush told the agent and the other two men that the white whiskey sold for $30 a case, and the aged whiskey for $40 a case. She would not sell them any whiskey.

The government agent told Mrs. Bush, among other things, that his name was Ray and that he lived and worked for a foundry in Knoxville. The government agent's first name is Raymond, but he does not live or work in Knoxville. He works for the Alcohol and Tobacco Tax Unit out of the Nashville office.

The government agent returned to the defendants' home on June 9, 1958, and engaged in another protracted conversation with Mrs. Bush in an effort to purchase some aged whiskey from her. He only had the informer with him on this occasion. The informer repeated to some extent the conversation had with Mrs. Bush on June 4th to the effect that she should know him as he had been there before. He continued to try to convince her she should sell whiskey to him. She told him, in substance, that he would have to bring someone with him whom she knew. She stated at that time to the government agent and the informer, among other things, that her husband had gotten mad with her for showing them the whiskey on June 4th and that he had stated, in substance, she "might as well have sold the whiskey on that occasion as to have shown it to them." Mrs. Bush told them on that occasion that she only had six jars of aged whiskey.

The informer was in the employment of the government when he went to the defendants' home on the 4th and 9th of June. As a result of the information obtained on the 4th of June and upon the affidavit of Mr. Hahn, the United States Commissioner at Knoxville issued a search warrant for the search of defendants' home on June 9, 1958. The warrant was executed on June 13, 1958. At the time of its execution only Mrs. Bush and two young car salesmen of Knoxville were present in the Bush home. Mr. Bush was absent from the premises. As a result of the search on this occasion seven and three-eighths gallons of nontax-paid whiskey were found as well as a small amount of bonded whiskey.

The problem presented in this case is whether the search warrant was legally issued. To put the problem another way, was the evidence obtained under the foregoing circumstances in violation of defendants' constitutional rights, particularly the Fourth Amendment of the Constitution which protects them against unreasonable searches.

Undoubtedly the government agent trespassed upon defendants' property when he drove his car about 40 feet in defendants' driveway to the left of defendants' residence as one faces such residence. Yates and the government informer committed the same trespass in going with the agent into the driveway. Defendants contend that this violation tainted the evidence which was subsequently obtained and upon which the search warrant was issued and once tainted could not thereafter be cured.

The government's answer to the contention is that although entrance of the government agent into the driveway may have been a technical trespass, such trespass did not taint the evidence thereafter obtained because a violation was not observed. until the government agent entered the kitchen along with the other parties where Mrs. Bush produced two half-gallon jars each being about half full of nontax-paid whiskey.

The government in that connection contends that defendants' rights were not violated because the government agent and the two persons with him were

invited into the kitchen of the defendants. There is force in this argument.

This presents the question as to whether the government agent and the two men with him rightfully entered the kitchen of the house of the defendants. The government agent frankly states that he made misrepresentations to Mrs. Bush. Those misrepresentations have been pointed out heretofore.

In cases of this character the government invariably argues through its District Attorney or his assistants to the jury that bootleggers ordinarily cannot be caught by ministers or other citizens of like standing; that it is necessary to have informers and undercover men to catch designing law violators.

Defendants' reply to this argument is that it is a violation of their rights for a government agent to enter their home through misrepresentation and subterfuge.

Some of the legal principles were discussed by this Court in a case involving these same defendants. This case is reported under the style of United States v. Bush, 136 F.Supp. 490.

There was one main difference in that case with the case under consideration. In that case there was no search warrant, whereas there is a search warrant in the present case. It was held in that case that defendants' constitutional rights were violated because of the misrepresentation of the government agent in getting into their home.

The problem was before the Third Circuit in the case of Fraternal Order of Eagles, No. 778, Johnstown, Pa. v. United States, 57 F.2d 93, and in that case the Court said, on page 94, as follows:

> "A search made as the result of an entry by physical force is not necessary in order to violate the Fourth Amendment. That amendment was designed to protect the individual against the abuse of official authority. A search and seizure following an entry into the house or office of a person suspected of crime by means of fraud, stealth, social acquaintance, or under the guise of a business call, are unreasonable and violate the Fourth Amendment. (Citing cases.)

> "The search and seizure in the instant case were based on the information secured through the entry gained by means of false representations. On this information alone they predicated probable cause when later applying for the search warrant, and the fact that a search warrant was thus obtained does not cure the effect of the previous deceptive entry. If the search and seizure had immediately followed this entry, under the principles laid down in the above cases they would unquestionably have violated the Fourth Amendment and set at naught the protection secured by it. The object of the entry was to discover as much as possible and to use what they could see as the basis of an application for a search warrant. When the agents first entered they searched with their eyes, and saw the very thing that they were looking for. This they had no right to see, and when illegally seen they had no right to use it as the probable cause to secure a search warrant. The government may not make an entry by means of false representations, search as fully as possible without arousing suspicion, and later make the fruit of that entry and search the basis of what otherwise might be a legal search and seizure."

In the case of United States v. Mitchneck, 2 F.Supp. 225, at page 226, District Court of Pennsylvania, the Court held the search invalid where the entry was made by government officers under the guise of a business call. The Court in that case said, in part:

> "The Fourth Amendment was designed to protect the individual against the abuse of official authority. A search made as the result of an entry by physical force is not nec-

essary in order to violate the amendment.

"A search and seizure following an entry into a house of a person suspected of crime, by means of fraud, stealth, social acquaintance, or under the guise of a business call, are unreasonable and violate the Fourth Amendment." (Citing cases.)

The same principle was dealt with in the case of United States v. Reckis, D. C.Mass., decided March 5, 1954, 119 F. Supp. 687. The facts are different in that case than those in the present case, in that the government officers searched without a warrant.

 In summary, the Court finds that the government agent entered defendants' premises in violation of their rights when he drove his car, along with his companions, about 40 feet in their driveway and stopped, that he misrepresented to them his residence and occupation in his conversation with them about the purchase of whiskey, that through this subterfuge he was able, along with the other two men, to get into the kitchen of the defendants, and he violated their constitutional rights by entering the kitchen by the methods indicated; that the information upon which the United States Commissioner issued the warrant was obtained in violation of defendants' constitutional rights and therefore the search warrant based upon such violation of these rights was invalid.

The motion to suppress is accordingly sustained.

### Supplementary Opinion

The ruling of this Court made on December 12, 1958 upon defendants' motion to suppress the evidence and to quash the search warrant, which ruling was based upon the memorandum opinion of the Court delivered from the bench on the same day, was set aside on December 15, 1958. The order to set aside was entered for the purpose of allowing more time to the District Attorney and to counsel for the defendants to brief the question of law raised by defendants' motion.

The Court has carefully examined the briefs which have been filed by both sides pursuant to the order to set aside. The Court was of the opinion at the time of the hearing, and, after examination of the briefs, is still of the opinion that the evidence upon which the search warrant was based was obtained in violation of defendants' rights under the Fourth Amendment to the Constitution.

The specific objection of defendants was that a search and seizure following an entry into a house of a person suspected of crime and under the guise of a business call is unreasonable and violated the Fourth Amendment.

The Fourth Amendment reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Supreme Court of the United States has consistently over the years protected a man's house against unreasonable search. In Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145—opinion by Butler, the right as an incident to an arrest contemporaneously to search the dwelling of a person who had been arrested several blocks away was denied. In Nathanson v. United States, 1933, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159—opinion by McReynolds, it denied the validity of a search warrant to search a private dwelling which rested upon mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances. In Hester v. United States, 1923, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898—opinion by Holmes, it carefully discriminated between evidence obtained by trespass in open fields near defendant's house and the special

protection thrown around houses by the Fourth Amendment. In Grau v. United States, 1932, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212—opinion by Roberts, it rejected evidence obtained by a search warrant of defendant's dwelling, which was based upon an affidavit which failed to show that it was a private dwelling or that, even though it was the place of manufacture, a sale of whiskey had been made therefrom; and held that a search warrant may issue only upon evidence which would be competent in the trial of the offense before a jury. In Taylor v. United States, 1932, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951—opinion by McReynolds, it held that to search without a warrant a garage adjacent to defendant's residence, after catching the odor of whiskey coming therefrom and seeing cardboard boxes therein, was inexcusable and the seizure unreasonable.

In Johnson v. United States, 1947, 333 U.S. 10, 68 S.Ct. 367, 369, 92 L.Ed. 436 —opinion by Jackson, the Court held as unjustified an arrest of petitioner and search of her living quarters without a warrant after a demand to enter under color of office after detection of the odor of burning opium coming therefrom. The opinion held:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. * * * The right of officers to thrust themselves into a home is * * * a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a police-

man or Government enforcement agent."

In McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 —opinion by Douglas, officers forced an entry into a lodging house and observed through the transom of defendant's bedroom numbers slips, money piled on tables and adding machines, paraphernalia of the numbers operation. They yelled to McDonald to open the door, which he did, and arrested him and seized the evidence objected to. The Court held the evidence should be suppressed, saying where officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. The presence of a search warrant serves a high function. It is demanded so an objective mind might weigh the need to invade one's privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime.

In Jones v. United States, 1958, 357 U.S. 493, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514—opinion by Harlan, federal officers obtained a daylight search warrant on the belief that a house sheltered an illicit distillery. However, without using the warrant and after dark they forced their way into the house and seized distilling equipment. Afterward they arrested defendant who was not in the house at the time. In this case the officers pushed by defendant's wife, who sought to block their entry. The Supreme Court reversed the case since items of equipment seized at the time of entry were admitted as evidence. The Court said, "It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant."

None of the Supreme Court cases that have been discussed above go so far as to hold that information obtained through illegal entry to a dwelling cannot be used as the foundation for a search warrant. The cases do exhibit a long and consistent trend on the part of the Court to

throw every safeguard around a dwelling and to protect it against unreasonable searches and seizures even at the risk of inconvenience to enforcement officers. If these cases are not precise authority for this case they forcefully and clearly establish the milieu for its decision.

We come now to cases which are closer factually to the Bush case. All support the conclusion reached herein.

The opinion of Mr. Justice Holmes in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 183, 64 L.Ed. 319, baldly states that, "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that *it shall not be used at all.*" (Italics ours.) Under this holding the moonshine liquor seen in the Bush case clearly could not have been used as evidence had it been seized on the first entry into the dwelling without a warrant because the entry was obtained by guile. The officers were not lawfully on the premises, and the fact they did not seize the liquor displayed to them is indicative that they knew this entry was not lawful. Equally under the tenet of the Silverthorne case the information so obtained would be prohibited as a basis for seeking a search warrant. Under the ruling in the Silverthorne case business records which were seized without a warrant, were abstracted and returned. The Court held that the abstracts made as the result of illegal seizure could not be used as a basis for subpoenaing the records of the company at the trial. It was in this connection that Mr. Justice Holmes said that records illegally acquired not only could not be used as evidence but could not be used at all. See, Somer v. United States, 2 Cir., 138 F.2d 790, 791, in which the trial court found that the entry of the officers to the apartment was unlawful—and in which the Court of Appeals ruled, "As the record stands, it was the information unlawfully obtained which determined their course. Since, therefore, the seizure must be set down to information which the officers were forbidden to

use, *it was itself unlawful under well-settled law.* Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 * * *.'"

Our Court of Appeals has expressed itself on the general problem in Wakkuri v. United States, 6 Cir., 67 F.2d 844, 845, as follows:

"After arrest and indictment a motion to suppress the evidence was duly made and denied. We are of the opinion that the motion should have been granted. Any search of a private dwelling without a search warrant is at least prima facie unreasonable. Cf. Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Hershkowitz v. United States, 6 Cir., 65 F.2d 920. And this is the more clear in the present case for the information at the disposal of the officers was wholly insufficient to justify the issuance of a search warrant. Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212; Staker v. United States, 6 Cir., 5 F.2d 312; Jozwich v. United States, 7 Cir., 288 F. 831. That which might not be done with the only kind of a search warrant that could have been obtained—an invalid one—should not be permitted without any warrant at all."

In United States v. Mitchell, D.C.Cal., 274 F. 128, 129, a search warrant was applied for, and issued, authorizing a search of 880 Bush Street. When the officers went to the premises they discovered that it was an apartment house in which a number of families lived. They hesitated and telephoned the Commissioner for permission to insert in the warrant the words, "By order of Com. Krull, this is to specify Apt. 4, especially." Over the protests of defendant's attorney, they searched Apartment 4, and finding a quantity of liquor seized it all, sealed some of it and removed one barrel. Subsequently, another warrant was issued, upon which they assumed again to seize the same liquor. The Court held the warrant could not be

amended by the officer upon a telephone communication from the Commissioner, nor could he himself have amended it without an amendment of the affidavit to specify the particular apartment to be searched. It said, *"The original entry into the defendant's home was therefore unlawful, and could not be cured by another warrant issued upon information thereby secured."* (Italics supplied.)

The most recent case we have found having a parallel factual situation is McGinnis v. United States, 1 Cir., 227 F.2d 598, 603. In that case on February 27, 1954, James M. Kent, an Agent of the Alcohol and Tobacco Tax Division, accompanied Sergeant Brown of the New Hampshire State Police, who was armed only with a John Doe warrant, in a search of the Hawes farm in the County of Merrimack. Brown had a state search warrant. Kent had no Federal warrant. Brown seized a metal pipe cup, a hydrometer, and a saccharometer, and deciding later in the day that the State had no interest in the matter turned the articles over to Kent's superior. Federal agents observed the farm the next day and seized a hastener and certain sugar samples but did not obtain a search warrant for the farm until March 1st. Defendants McGinnis, Costanzo and Sullivan were arrested by Kent on February 27th. In Kent's affidavit, upon which the search warrant of March 1st was issued, Kent recited certain specific items observed by him in the course of his visit to the Hawes farm on February 27th.

During the trial defendants objected to any evidence from any of the searches of the Hawes farm, and the Court excluded items seized on February 27th and 28th. However, it ruled that the search warrant of March 1st was valid and that evidence offered thereunder was properly admitted.

The Court of Appeals reversed, holding that the search warrant of March 1st was invalid. On this the Court of Appeals had the following to say:

"*A federal agent cannot participate in an unlawful search, and then on the basis of what he observed in the course of that search, and on that basis alone, go to a United States Commissioner and swear out a search warrant.* Such a search warrant, and the evidence procured in the course of a search thereunder, would be merely the illegal product of a previous unlawful search by the federal authorities. See Silverthorne Lumber Co., Inc. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Fraternal Order of Eagles, No. 778 v. United States, 3 Cir., 1932, 57 F.2d 93. See also Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436." (Italics supplied.)

In concluding, reference is again made to the decisions of United States v. Mitchneck, D.C.Pa., 2 F.Supp. 225, and Fraternal Order of Eagles, No. 778, Johnstown, Pa. v. United States, 3 Cir., 57 F.2d 93, where search warrants based upon observations made as the result of an entry of a house made under the guise of a business call, were held invalid. These cases are substantially identical to the Bush case.

The Court concludes that the motion to suppress the evidence must be sustained.

It is asserted in Section 7 of defendants' motion that the evidence upon which the Grand Jury returned the indictment was illegally obtained. The U. S. District Attorney announced in open court that this was the only evidence presented to the Grand Jury. In order to remove any difficulties to an appeal by the Government it is ordered that the indictment be, and same hereby is, dismissed.