[Crim. No. 7021.  Second Dist., Div. Two.  May 25, 1960.]

THE PEOPLE, Respondent, v. EDDIE MAE NEAL, Appellant.

Walter L. Gordon for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant was convicted of two counts of violation of section 337a, Penal Code, i.e., bookmaking. She was sentenced to the county jail on each count, sentences to run concurrently, same suspended and probation granted.

Appeal was taken from the judgment and an order denying her motion for new trial.

Appellant's counsel argues that the police searched her apartment without probable cause and without her consent; also that it was error to receive in evidence certain betting paraphernalia then seized.

The vital question is that of consent, which is an issue of fact where there is conflicting substantial evidence (*People* v. *Gorg*, 45 Cal.2d 776, 782-783 [291 P.2d 469]; *People* v. *Smith*, 141 Cal.App.2d 399, 402 [296 P.2d 913]). We are confronted here with a conflict such as to convince us that the trial judge's finding of consent must be upheld.

The contention of the respondent is that appellant opened the door in response to the officers' ringing of the door bell and when they showed a police badge and said they would like to talk to her, she said ''Okay,'' stepped back and opened the door wider in an implied invitation for them to enter; that they entered and Sergeant Walters looked through the dining room (which they first entered) into the kitchen and there saw familiar bookmaking paraphernalia. If this was the whole story there was no illegality in the seizure which was then made. (*People* v. *Roberts*, 47 Cal.2d 374, 379-380 [303 P.2d 721].)

Before arrival at the apartment building in which defendant lived the officers had only her telephone number and address; they had not staked out the premises nor seen any suspicious activities around it; did not know defendant and had no probable cause for a search of her residence. Counsel stresses the fact that no one specifically said ''may I come in'' or ''come in'' or ''may I search.'' These are but elements in the factual problem whether defendant consented to the entry of the police into her dining room, and the court was justified in drawing the inference that her stepping back and opening the door wider when the police said they wanted to talk to her was an invitation as well as consent.

A more serious problem is presented by the argument that the police entered through a ruse, pretending they merely wanted to talk to defendant while entertaining the intention to search the apartment; that they engaged in no conversation but walked across the dining room to a spot from which they could see the kitchen table and the damning evidence upon it. This contention is based partly upon Sergeant Walters' cross-examination: ''Q. By Mr. Gordon: Now, when you went to this apartment and asked if you could talk

to this lady, you actually wanted to search the apartment; didn't you? Now, Officer, I notice you are smiling. May the record indicate he is smiling, your Honor? THE COURT: I wasn't looking at him. Yes, I am looking now. He is smiling. The record may so show. . . . THE WITNESS: It is the same as any other investigation.'' ■ Our Supreme Court said, in *People* v. *Roberts, supra,* 47 Cal.2d 374-378, that ''an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid,'' citing *Gouled* v. *United States,* 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647] and *Fraternal Order of Eagles* v. *United States,* 57 F.2d 93. To the same effect, see *Abel* v. *United States,* 362 U.S. 217 [80 S.Ct. 683, 4 L.Ed.2d 668, 678]; *United States* v. *Bush* (District Court Tenn.), 172 F.Supp. 818, 821-825; *United States* v. *Bush* (District Court Tenn.), 136 F.Supp. 490, 492; *United States* v. *Mitchneck* (District Court Pa.), 2 F.Supp. 225, 226. ■ Moreover, the recognized right of police ''to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes'' (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855]) does not connote a privilege of making a search without developing adequate cause. (*Cf. People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]; *People* v. *Roberts, supra,* 47 Cal.2d 374, 378; *People* v. *Harvey,* 142 Cal.App.2d 728, 731 [299 P.2d 310]; *People* v. *Mills,* 148 Cal.App.2d 392, 402 [306 P.2d 1005]; *People* v. *Schaumloffel,* 53 Cal.2d 96, 101-103 [346 P.2d 393].)

■ In examining the applicability of these authorities at bar it is incumbent upon us to recognize another pertinent principle, that the trier of fact ''could have accepted portions of defendant's testimony and statements, disbelieved other portions.'' (*People* v. *Matlock,* 51 Cal.2d 682, 695 [336 P.2d 505].) ■ It is true in criminal as well as civil cases that the court is not bound to accept testimony of the appellant which is not actually convincing even though it be uncontradicted. ''It must be considered in connection with other testimony and reasonable inferences therefrom, and the rule that the jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material.'' (*Nevarov* v. *Caldwell,* 161 Cal.App.2d 762, 777 [327 P.2d 111].)

■ The trial judge pertinently observed: ''I am decid-

ing this issue by the rule of probabilities.'' If it be assumed that the officers said ''we would like to talk to you,'' secretly intending to make a search rather than to talk, that defendant opened the door wider for their entry, that they thereupon began a search instead of an interview, it does not follow that the entry was the result of a successful ruse or subterfuge because the evidence shows circumstantially that defendant's mind conceived an entry of police ''for a talk'' to be the equivalent of an entry for a search, and when she assented to one she expected the other. Portions of the defendant's testimony which sustain this inference are these. When the officers at the bottom of the steps showed a badge and said they wanted to talk to her, she asked if they had a search warrant. As they came up the stairs she stood at the top asking what they wanted. ''So as he said, 'May I come into the apartment,' I said, 'Do you have a search warrant?' '' ''That is when the Sergeant asked me 'What is your name?' . . . When I mentioned Eddie Mae Neal, that is when they began to run, to rush. . . . Then I stopped and I still asked them if they still had a search warrant. I still insisted on them to show me something to give them a reason to enter into the apartment. Q. Where were you standing at that time? A. Still standing in the door leading into the apartment.'' As they actually entered the apartment she was asking about a search warrant. On the way to the Administrative Vice Building, according to Sergeant Walters, ''Mrs. Neal told me that it was her understanding that you could not come into a person's house and arrest them and make a search unless you had a search warrant.''

██ ''The extent of the consent is a question of fact for the trial court just as the voluntary nature of the consent is such a question.'' (*People* v. *Hickens,* 165 Cal.App.2d 364, 368 [331 P.2d 796].) The trial judge was warranted in finding, and we must assume that he did find, that defendant consented to the officers entering her apartment, that to her mind that meant a search of same and her consent extended that far. Therefore, the subterfuge cases are not controlling at bar.

By the same token there was no error in overruling objections to the receipt of the betting paraphernalia in evidence or in denying defendant's motion to suppress that evidence.

Judgment and order denying new trial affirmed.

Fox, P. J., and Herndon, J., concurred.