[Crim. No. 7745.   Second Dist., Div. One.   Nov. 8, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WADIE MOORE, Defendant and Appellant.

Virgil V. Becker, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted by a jury of possession of marijuana; he admitted a prior narcotic misdemeanor conviction.

Viewing the evidence in a light most favorable to respondent the following is a résumé of the events leading up to defendant's arrest. Defendant quarreled with one Gloria Hernandez who also occupied his apartment; thereafter she made to police a report charging him with assault with a deadly weapon, alleging that he had a small nickel-plated automatic in his apartment. Pursuant thereto officers went to the apartment house around 5 p. m. on December 9, 1960; they asked the manager's wife for a key to defendant's apartment. Officer Norris went with her to get the key, but when they arrived at defendant's apartment they found the door already open and Officers Wapato and Guy inside. The pass key was not used to open the door. The officers had been admitted by defendant. Officer Wapato had knocked on defendant's door;

defendant opened it several inches. The officer asked him his name; he answered, "Jimmy Moore." He asked him under what name he had rented the apartment; defendant said, "James Roberts." The officer then told defendant that Gloria had gone to the Wilshire Station and made an assault with a deadly weapon report naming him as a suspect, stating that he had a small nickel-plated automatic in the apartment; he asked defendant if he minded if they came in and talked to him. Defendant replied, "No," backed up a couple of steps, opened the door wide and said, "Come on in." The officers then talked to defendant and asked him if he had a gun in the apartment and if he minded if they looked around for it; he responded, "Go ahead. I have nothing to hide." Officer Norris questioned him concerning some bullet holes in the closet and bathroom doors. The officers looked around and under the pillow on the left side of the bed they found a white napkin containing 4 marijuana cigarettes and 2 red capsules. They also found a half-smoked marijuana cigarette on the floor near an ash tray; they found no gun. Asked about the 4 cigarettes defendant said, "That is my marijuana. I should have throwed it out the window when you knocked on the door, but I was sleepy." When asked about the cigarette butt, defendant said he did not know to whom it belonged.

Defendant took the witness stand and denied he opened the door to the officers. He said he had been asleep while they entered by the landlady's pass key; he denied giving the officers permission to search the apartment, and testified that Gloria also occupied his apartment, they had a quarrel the night before, he had no knowledge of the four cigarettes, and did not tell the officers that they were his or that he knew anything about them.

Appellant claims that inasmuch as there is no testimony of any illegal activity in his apartment, the lower court erred in finding the officers' entry without a warrant to be legal; he also complains that the jury was not properly instructed concerning knowledge and possession of the narcotic.

Acting upon information that defendant had committed an assault upon a woman, it was not unreasonable for the officers to call upon him at his apartment for the purpose of seeking an interview with him. (*People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852].) Defendant voluntarily opened the door to their knock, and upon being asked if he minded if they come in, defendant not only responded, "No," but opened the door wide and told them to, "Come on in."

This clearly constituted a voluntary consent to the entry by the officers, and the trier of fact so found. (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Elliott,* 186 Cal. App.2d 178 [8 Cal.Rptr. 795]; *People* v. *Neal,* 181 Cal.App.2d 304 [5 Cal.Rptr. 241].) Also established in the evidence is defendant's voluntary consent to the officers' search. They held a "rather lengthy conversation" with defendant; they advised him of the report made by Gloria and her statement regarding the gun. They asked him if he had a gun and he said, "No." Officer Norris questioned him about some bullet holes in the closet and the bathroom doors. They then asked him if he minded if they looked around for the gun; defendant responded, "Go ahead. I have nothing to hide." While the evidence is in conflict on this point, defendant having denied that he either admitted the officers to the premises or permitted them to search, the trial judge on the issue of probable cause, as he had a right to do, (*People* v. *Neal,* 181 Cal.App.2d 304 [5 Cal.Rptr. 241]), rejected the defendant's testimony as not credible and accepted the officers' version of what occurred. ▮▮▮ If one freely consents to an entry or search his constitutional rights are not violated and any search and taking of evidence pursuant thereto is not unreasonable. (*People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241]; *People* v. *Davis,* 178 Cal.App.2d 887 [3 Cal.Rptr. 465].)

▮▮▮ Without weight is appellant's argument that the jury was not properly instructed relative to his knowledge and possession of the marijuana, for he neither sets forth the instructions given nor therein points up the error; moreover, no instructions were included in the record for our consideration and they are not before us. (*People* v. *Roberts,* 182 Cal. App.2d 431 [6 Cal.Rptr. 161]; *People* v. *Casado,* 181 Cal. App.2d 4 [4 Cal.Rptr. 851].) Thus we assume them to be correct. (*People* v. *Danielson,* 203 Cal.App.2d 498 [21 Cal. Rptr. 469].)

▮▮▮ Appellant claims he was denied the right to independent counsel. He says he was unaware of his right to counsel, the full nature and extent of his deprivation of counsel and the effect of his waiver thereof; and that he was not represented at the time of sentence.

On January 4, 1961, prior to arraignment, the public defender was appointed to represent defendant; he represented him at arraignment and plea and at the trial during the presentation of evidence and argument of both counsel to the jury. On the last day of the two-day trial, when the case

was called and jury before the court instructed the jury, and in its presence, defendant advised the court that he had discharged his attorney inasmuch as he had been "inadequately represented." Then out of the presence of the jury, Mr. Littlefield, the public defender, advised that this was the first time he had known of defendant's dissatisfaction with his representation although he had refused to bring up various points of law urged by defendant which he deemed inapplicable. Defendant then cited *Woods* v. *United States* and its holding and charged he had been "misled and misrepresented," and that his lawyer had refused to bring out certain relevant points of law and subpoena his "informer" (Gloria Hernandez). The court asked him if he wished to represent himself and he answered, "Yes, I do." The public defender advised the court of his unsuccessful efforts to locate Gloria, whereupon the judge said to defendant: "All right, now you have a constitutional right to represent yourself. . . ." Defendant interrupted by declaring he wanted to move for a mistrial, but the court continued and the following colloquy took place: "The Court: First lets get—— You understand your constitutional right to be represented by counsel at all stages of the proceedings? The Defendant: Yes. The Court: You have a right to represent yourself if you so desire. The Defendant: I do desire. The Court: You fully understand your right to counsel, is that right? The Defendant: Could you explain it to me in detail? I have a vague understanding. I don't know. I am not that familiar with the law. The Court: The Constitution says you have a right to have a lawyer represent you, but you yourself, can give up that right and represent yourself if you so desire. The Defendant: I do desire. The Court: Very well, you may. Mr. Littlefield: May the public defender be relieved? The Court: You may represent yourself as your own counsel and the public defender is relieved as attorney of record on your motion for the record." Defendant then proceeding on his own behalf moved for a mistrial on two grounds. He argued the matter intelligently and at length, citing various authorities.

■ While an accused has a right to be represented by counsel (Cal. Const., art. I, § 13; Pen. Code, § 686), he may waive that right (*In re Berry*, 43 Cal.2d 838 [279 P.2d 18]) and defend himself. (*People* v. *Ballentine*, 39 Cal.2d 193 [246 P.2d 35].) However, such waiver to be effective must be the result of an intelligent understanding of what he does in that connection. (*People* v. *Chesser*, 29 Cal.2d 815 [178 P.2d 761,

170 A.L.R. 246] ; *People* v. *O'Ward,* 168 Cal.App.2d 127 [335 P.2d 762].)  ██  ''The determination of whether there has been an intelligent waiver of counsel involves a consideration of the nature of the charge, the facts and circumstances of the case, and the background, experience, mental competence and conduct of the accused. (*In re Connor,* 16 Cal.2d 701, 710 [108 P.2d 10] ; *People* v. *Chesser, supra,* 29 Cal.2d 815, 822.) Whether a waiver in a particular case meets the standard is largely a matter for the determination of the trial judge, and his decision will not be disturbed on review in the absence of an abuse of discretion. (*People* v. *Loignon,* 160 Cal.App.2d 412, 418 [325 P.2d 541.)'' (*People* v. *O'Ward,* 168 Cal.App.2d 127, 131 [335 P.2d 762].)

██  The conviction at bar is defendant's second within a year. The former offense, No. 220641, also involved possession of marijuana; he was convicted in December 1959, and placed on probation. It appears from the record herein, that in No. 220641 defendant was also represented by the public defender; he insisted that he appear in propria persona in his place and, representing himself, made a motion under section 995, Penal Code. Later the public defender was reappointed and he thereafter represented the defendant. Thus prior to the within trial, defendant had experience representing himself; he knew what to expect upon discharging his lawyer; he also knew that had he wanted the public defender again the court in all probability would have reappointed him. From his previous experience as his own counsel, his statements to the court relative to his right to counsel, his desire to represent himself several times expressed to the trial court, the judge's explanation concerning his right to counsel, his argument (with an obvious understanding of the law and citation of authorities) to discharge his lawyer, and his subsequent conduct wherein he moved to dismiss and for a mistrial, argued the matter and proceeded in place of counsel, it is obvious that defendant well knew of his constitutional right and that he could request the public defender to remain, thoroughly understood his actions in discharging the public defender and proceeding on his own, had an intelligent conception of the consequences of those acts knowing that he would thereafter have to defend himself (*People* v. *Williams,* 174 Cal.App.2d 364 [345 P.2d 47] ; *People* v. *Butcher,* 174 Cal.App.2d 722 [345 P.2d 127]), knew what he faced as his own lawyer, and was competent, as a lay person, to represent

himself. The lower court so found and we think properly so; and we will not disturb its determination.

■ Defendant did not discharge the public defender until after the evidence was in and counsel had argued to the jury; all that remained was the court's instructions to the jury, its return with a verdict and the imposition of sentence. The fact that the trial court permitted defendant to proceed to represent himself during the latter proceedings, under the instant circumstances and after his waiver of the right to counsel, does not constitute error. (*People* v. *Linden,* 52 Cal. 2d 1 [338 P.2d 397].) Actually the trial court had no choice in the matter for defendant insisted on discharging the public defender and representing himself (*People* v. *Mattson,* 51 Cal.2d 777 [336 P.2d 937]), and the record shows that the court properly protected the defendant's rights in all proceedings.

Appellant cites at length from *People* v. *Havel,* 134 Cal. App.2d 213 [285 P.2d 317]. We have no quarrel with the principles stated therein but find them to be here inapplicable for the circumstances reveal a waiver of right to counsel; in the *Havel* case they do not.

While he claims "unsurmountable bias and prejudice" in the minds of the jury caused by his act of waiving counsel, appellant has failed to point up in what manner his rights were prejudiced. ■ " 'The burden of showing unfairness and a miscarriage of justice by the denial of defendant's right to counsel in some stage in a proceeding against him rests upon the defendant.' (*Stroble* v. *California, supra,* at page 198 [343 U.S. 181 (72 S.Ct. 599, 96 L.Ed. 872)].)" (*People* v. *O'Ward,* 168 Cal. App.2d 127, 131 [335 P.2d 762].)

■ Other alleged error relates to the action of the trial court permitting the jury, after argument of counsel but before instructing the jurors, to separate and return to their homes. In the late afternoon of Thursday, March 2, the jury was excused and ordered to return Monday, March 6, for instructions; the court explained: "We will have to defer it (submission) until Monday morning." The record disclosed no objection to this continuance. Appellant now says the delay was too long in that it subjected the jurors to news accounts of narcotic enforcement problems, prejudicing his cause. While he made the same argument on March 6 on a motion for mistrial, it was rejected by the lower court by its denial of the motion.

Whether a jury may separate or be kept together prior to

submission of the cause to a jury, is a matter within the discretion of the trial court (Pen. Code, § 1121; *People* v. *Yeager*, 194 Cal. 452 [229 P. 40]; *People* v. *Burwell*, 44 Cal.2d 16 [279 P.2d 744]); submission of the cause does not occur until the jury has received all of the instructions. (*People* v. *Von Moltke*, 118 Cal.App. 568 [5 P.2d 917].) A similar situation is found in *People* v. *Erno*, 195 Cal. 272 [232 P. 710], wherein the court rejected the same argument: "The record, as we have already indicated, discloses that the adjournment, for a period of ten days, was taken with the full consent of all the counsel in the case. The only complaint the substituted counsel for Erno seem to make in the matter is that during the long recess some of the jurors might have been exposed to undue influence against the defendants, created by the press and newspapers published in the vicinity of Yreka where the trial was held. If it were a fact that the jury had been improperly influenced from such sources, it was not made to appear. It nowhere appears in the record in what manner, or how, the action of the court, in granting the long continuance, resulted to the detriment of Erno, or tended to prevent him from having a full, fair and impartial trial. The burden was upon him to show that he was prejudiced by the action so taken. (*People* v. *Elgar*, 39 Cal.App. 78, 80 [178 P. 168].)'' (P. 282-283.)

▇▇▇▇ Appellant's last contention is that he was not sentenced within the time prescribed by law. The jury reached a verdict on March 6, 1961, and the matter was continued for further proceedings to March 30, 1961, 24 days later. He says that the time for pronouncing judgment and sentence was not set within 21 days after the verdict, citing section 1191, Penal Code. Appellant presents no argument in support of his claim.

The record discloses that on March 6, 1961, after the jury returned its verdict of guilty, the trial judge advised the defendant that he was referring the matter to the probation department for investigation and a report. He then asked defendant: "Do you waive time for sentence? Do you understand what I am talking about? You have the right to have sentence imposed within 21 days but the report will probably take a few days longer unless you waive time for sentence. In other words the hearing on probation and sentence would be set for March 30—that is about 24 days away. Is that satisfactory?"; to which the defendant responded, "Yes." Then on March 30 he asked defendant if there was any legal cause

why judgment should not then be pronounced; defendant answered: "No, sir." Thereafter he pronounced judgment. Defendant having personally waived the 21-day requirement under section 1191, Penal Code, it was proper for the trial judge to continue the time for pronouncement of judgment to March 30. (*People* v. *Bittick,* 177 Cal.App.2d 479 [2 Cal.Rptr. 378]; *People* v. *Mullane,* 182 Cal.App.2d 765 [6 Cal.Rptr. 341].) Moreover, appellant has not pointed up any prejudice or miscarriage of justice for the trial court's failure to impose sentence within the time specified by section 1191. (*People* v. *Washington,* 204 Cal.App.2d 206 [22 Cal.Rptr. 185].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.