[Crim. No. 7268. Second Dist., Div. Three. Nov. 4, 1960.]

THE PEOPLE, Respondent, v. JAMES ERNEST ELLIOTT, Appellant.

James Ernest Elliott, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—The defendant appeals from a judgment of conviction of the crime of possession of heroin. (Health & Saf. Code, § 11500.)

The appellant waived his right to trial by jury. The basic issues raised on this appeal are whether the arrest of the appellant and the search of his premises were without reasonable or probable cause. The evidence will be summarized.

Harry E. Dorrell, a police officer for the city of Los Angeles, testified that he arrested the appellant on October 22, 1959, at 4700 South Figueroa in that city. The officer's partner was with him. Prior thereto, the officer had checked the appellant's

record at the police department and found that he was registered as an ex-convict, his address having been stated as being 2327½ Hooper, but that he was not registered as being at the Figueroa Street address. At the time of the arrest, he had with him a photograph of the appellant. After he knocked on the door of a room at the Figueroa Street address, the appellant opened the door. The officer showed him his badge, stated, "We are police officers," and said that he and his partner would like to talk to the appellant. The officer then testified that the appellant "opened the door and stepped back and my partner and I walked in the room." The witness asked the appellant why he had not registered as an ex-convict at that address. The reply was, "They told me I didn't have to." The appellant further said that he had lived there about two years. The appellant was wearing a pair of pants but was naked above the waist. The witness observed old scar tissue and "fresh hypodermic needle marks" on the left arm of the appellant. In the course of police work, the officer had seen similar scar tissue and needle marks on "known users of narcotics." When the appellant was asked if he was using narcotics, he said that he was not but formerly did and stated that his "last fix was about two weeks ago." The officer then told him he was under arrest "for narcotics" and for failing to register as an ex-convict with that address on Figueroa Street. The two officers then searched the room. A hypodermic needle and medicine dropper were found in the pocket of a suit which was hanging in the room. In a dresser drawer was a small plastic package enclosing about 13 balloons. Each balloon contained a powder.

It was stipulated that a forensic chemist, if called as a witness, would testify that in his opinion, formed after an examination, the balloons contained heroin. It was further stipulated that the officers acted without a warrant.

The testimony heretofore summarized was contained in the transcript of the preliminary hearing and was received pursuant to stipulation, "subject to any legal objections to the admissibility of the evidence." At the trial, Officer Dorrell was called for further cross-examination. Upon being asked as to what was required under the legislation as to registration, he answered that an ex-convict was "required to register each time he changes his address, keep the police informed of his whereabouts." Before he checked the police records, he knew that the appellant lived at 4700 South Figueroa. The information he gained which indicated this address came from a con-

fidential informant. The court sustained an objection to the question of the appellant's counsel as to the name of the informant. Before he entered the appellant's room, he did not ask the appellant if he could come in. When asked as to his purpose in going to the premises where the appellant was, the officer said, "To try to catch the defendant in possession of narcotics is one of my main reasons."

The motion of the appellant to suppress the evidence "on grounds there was insufficient probable cause for the arrest in question" was denied.

Thereupon, the appellant testified as a witness in his own behalf. He only opened the door "a crack" because he had a "16 month Doberman" there who did not "allow anybody in the house." One of the officers made a statement that he was under arrest for possession of narcotics and "pushed the door." The appellant grabbed the dog and quieted her. After handcuffs had been placed upon him, he was asked why he had not registered. He replied that he had never been in the penitentiary and had "seen no cause for registering." He had a motorcycle shop in the rear of the premises. Usually he stayed with his mother but he sometimes slept in that room which he shared with another man. The narcotics and the hypodermic kit did not belong to the appellant. He suspected that those objects belonged to his roommate who, at the time of trial, was "doing sic months for addiction." On cross-examination, the appellant said that he had lived at the Hooper Avenue address some eight or nine years before and had registered with the police department as having that address because the "Probation Office" forced him to do so. When asked if he had needle marks on his arm when the officer came in, he testified that he had scar tissue but not from the use of narcotics. The scar tissue resulted from his use of a darning needle on himself so that he could pretend to his friends that he was using narcotics.

We turn first to the question of probable cause for the arrest. The inquiry of Officer Dorrell as to whether the appellant had registered as a convicted person[1] may be disregarded inasmuch as it is clear from the evidence that a primary pur-

---

[1] The officer apparently was referring to the registration requirements embodied in the Los Angeles Municipal Code. In *Abbott* v. *City of Los Angeles*, 53 Cal.2d 674 [349 P.2d 974], decided after the date of the arrest of the appellant in the present case, it was held that the city was without constitutional power to enact the particular ordinance.

pose of the officers in seeking out the appellant was "[t]o try to catch the defendant in possession of narcotics." In view of the trial court's determination of the case, we must assume that the trier of fact impliedly found that it was not the intention of the officers to make an arrest unless there was probable cause. (*People* v. *Robles*, 183 Cal.App.2d 212, 214 [6 Cal. Rptr. 748].) Such a finding has substantial support in the record.

In *People* v. *Michael*, 45 Cal.2d 751, at page 754 [290 P.2d 852], it was said that "it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes." The trier of fact was warranted in reaching the conclusion that such an interview was undertaken by the officers in the present case.

Officer Dorrell's testimony that the appellant "opened the door and stepped back" after that officer had informed the appellant that the officers desired to talk to him supported the inference that an implied invitation to enter was given to them. A similar factual situation was presented to the court in *People* v. *Smyre*, 164 Cal.App.2d 218, wherein it was said at page 224 [330 P.2d 489] : "After they knocked on the door and stated their purpose, Mary Frazer opened the door a few inches. Upon seeing the officers, she opened the door further, stepped back and sat down on the bed. Under these circumstances she clearly consented to the entry of the officers. . . . The question of her consent was a question of fact properly left to the trial court. Her expression of assent to the officers and her action in opening the door suggests an affirmative invitation to the officers to enter." (See also *People* v. *Holland*, 148 Cal.App.2d 933, 936 [307 P.2d 703].) It is true that the appellant gave testimony that, if believed by the trier of fact, would have supported the conclusion that no consent or invitation to enter the room was given to the officers. But the determination of the credibility of the witnesses and of the inferences to be drawn from the evidence was for the trial judge as the trier of fact. (*People* v. *Neal*, 181 Cal.App.2d 304, 308 [5 Cal.Rptr. 241].)

Upon entering the room, the officer observed "fresh hypodermic needle marks" on the appellant's left arm. The appellant, upon inquiry, said that he was not using narcotics, although he formerly did, and that his "last fix was about two weeks ago." In the light of such facts, there was probable cause for the arrest which then ensued. In *People* v. *Rios*, 46 Cal.2d 297, Mr. Justice Traynor stated at pages 298-299 [294

P.2d 39] : "From defendant's admission that he had taken an injection of heroin two weeks before, it could be inferred that he had possessed heroin in violation of Health and Safety Code, section 11500. Moreover, since the validity of an arrest does not depend on whether the defendant may in fact be found guilty of the offense for which he is arrested (*Coverstone* v. *Davies,* 38 Cal.2d 315, 319 [239 P.2d 876] ), and since in determining its validity the court is not limited to a consideration of evidence that would be admissible at the trial on the issue of guilt (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Gorg,* 45 Cal.2d 776, 780-781 [291 P.2d 469] ), it is immaterial that defendant could not be convicted of possessing heroin without independent proof of the corpus delicti.'' (See also *People* v. *Smith,* 141 Cal.App.2d 399, 403 [296 P.2d 913] ; *People* v. *Jaurequi,* 142 Cal.App.2d 555, 560 [298 P.2d 896].)

The search of the room which followed the arrest was proper since it was incident to a lawful arrest. (*People* v. *Alcala,* 169 Cal.App.2d 468, 471 [337 P.2d 558].) Under such circumstances, there was no requirement that the officers first obtain a search warrant. (*People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40].)

There was no error in the refusal of the court to require the disclosure of the name of the confidential informant. As this court said in *People* v. *Gutierrez,* 171 Cal.App. 2d 728, at page 731 [341 P.2d 54] : ''Where the prosecution seeks to show probable cause for an arrest and search by testimony as to communications from an informer, the identity of the informer must be disclosed when the defendant seeks disclosure or such testimony must be stricken on proper motion of the defense. (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39].) But disclosure may not be required where there was probable cause apart from the informer's communications. (*People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19].)'' (See also *People* v. *McMurray,* 171 Cal.App.2d 178, 183 [340 P.2d 335] ; *People* v. *Alcala, supra,* 169 Cal.App.2d 468, 471 [337 P.2d 558].)

There is no merit in the appellant's contention that there was error in permitting an amendment to the information so as to allege a prior conviction of the crime of violation of section 11500, Health and Safety Code, a misdemeanor. The information was filed on October 30, 1959. Thereafter, the appellant entered his plea of not guilty. On December 28,

1959, the time set for trial, such amendment was made,[2] the appellant denied the allegation of a prior conviction, and, on the motion of the appellant, the case was continued to January 21, 1960, for trial. Such amendment was in compliance with the provision of section 11500 of the Health and Safety Code that a prior conviction of such a nature "shall be charged in the indictment or information." Such procedure was proper and the appellant suffered no prejudice. (*Cf. People* v. *Melgoza,* 183 Cal.App.2d 600, 602 [7 Cal.Rptr. 82]; see *People* v. *Stoddard,* 85 Cal.App.2d 130, 138-140 [192 P.2d 472].)

The appellant also contends that the prosecution used unfair means to convict him in that evidence of prior arrest records was received. He apparently refers in part to the following testimony of Officer Dorrell which was offered to show probable cause: "I checked the defendant's record at the Police Department and found he was registered as an ex-convict at 2327½ Hooper. As far as I could find out by the police records, he had never registered at 4700 South Figueroa." On further cross-examination at the time of the trial in the superior court, Officer Dorrell stated he did not recall what the crime was of which the appellant had been convicted. During the cross-examination of the appellant when he testified on his own behalf, the objection on his behalf to inquiry as to whether he was registered with the police department at the Hooper Avenue address was overruled. While he was thereafter asked as to whether he was a narcotic addict and as to other arrests for addiction, his counsel interposed no objection. Even if it be assumed that any of such evidence should have been excluded, it cannot be said that any prejudice to the substantial rights of the appellant resulted therefrom in his trial wherein an experienced trial judge was the trier of fact. In the absence of such prejudice, reversible error cannot be found. (See *People* v. *Watson,* 46 Cal.2d 818, 834-837 [299 P.2d 243].)

The appellant makes reference to a claim that the attorney he had employed to represent him did not appear in person but sent another attorney who lacked trial experience. The record does not show any basis for complaint on his part.[3] The

---

[2]While the minutes of the court do not expressly state that the amendment was made with the permission of the court, we must presume that it was filed pursuant to such leave. (*People* v. *Loggins,* 132 Cal.App.2d 736, 738 [282 P.2d 961].)

[3]When the trial was resumed on February 16, 1960, after the case had been partially tried on February 3, 1960, Mr. Weiss, the attorney

point is without merit. (See *People* v. *Wein,* 50 Cal.2d 383, 410-411 [326 P.2d 457].)

The determination that the appellant was guilty of the offense charged is amply supported by the evidence. The finding of narcotics in a room occupied by an accused raises a reasonable inference that the illegal drug is his even though he may share the room with another. (*People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 340 [244 P.2d 750].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 2, 1960.

who had appeared for the appellant on February 3, was not present. His associate, Mr. Klynn, was present. The court asked the appellant, "You are willing to proceed at this time, Mr. Elliott, with Mr. Marvin Klynn, who is associated with Mr. Harry Weiss, is that correct?" The appellant answered, "Yes, sir."