[Crim. No. 3862. First Dist., Div. Two. Mar. 14, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. VICTOR
SPRINKLE et al., Defendants and Appellants.

Leland C. Spiegelman, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, John S. McInerny, Robert R. Granucci, Arlo E. Smith and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Appellants, Victor and William Sprinkle, were jointly charged, tried, and found guilty of robbery in the first degree. The verdicts were rendered on June 16, 1960. On June 17, 1960, a motion for a new trial was made on behalf of each and denied, and a motion for probation made on behalf of each and then continued. Thereafter, on July 8, 1960, Victor, in propria persona, filed a premature notice of appeal. On July 15, the court denied Victor's motion for probation and entered judgment against him. William's motion for probation was continued, as he was obtaining different counsel. Victor did not file another notice of appeal but on July 15, 1960, filed an affidavit for his records and transcripts. On July 25, William's motion for probation was denied, and judgment entered against him. On the same day, William filed a timely notice of appeal. The People have not raised any issue about Victor's premature notice of appeal of July 8, 1960, as rule 31(a) of the Rules on Appeal provides, so far as relevant: "A notice of appeal filed prior to the time prescribed therefor is premature but may, in the discretion of the reviewing court for good cause, be treated as filed immediately after the rendition of the judgment or the making of the order."

On this appeal from the order denying each motion for a new trial and from the judgments of conviction, the appellants contend that they were denied due process of law because: 1) they were denied their constitutional right to compel the attendance of witnesses; 2) they were denied their right to counsel; and 3) the trial court committed prejudicial error in refusing to re-read certain testimony to the jury. In addition, appellant, William Sprinkle, contends that the trial court abused its discretion in denying his motion for a new trial. There is no merit in any of these contentions.

The record reveals the following facts: On the evening of Sunday, March 13, 1960, between 8:30 and 9 p. m., Clyde Collins, the attendant of the Shell Service Station at the corner of 17th and Clayton Streets in San Francisco, was preparing to close the station at the usual hour of 9 p. m. Collins had just counted the money in the safe and turned to light a cigarette when he saw the appellants, Victor and William, walking into the station. As Collins went to meet them, William pulled out a revolver and motioned him to go to the back of the lube room. William then handed the pistol to Victor. Victor followed Collins back into the lube room and held the pistol on him while William went into the office and took about $350 from the safe. A few minutes later, William returned to the lube room and one of the appellants hit Collins on the head with the revolver. Both left immediately. Collins lay on the floor a short time and then summoned the police. The next day, Collins identified Victor at a lineup and picked a picture of William from a series of photographs which were handed to him. Collins was certain that he had seen the smaller of the two men (Victor) before, but was not certain where. Later, he remembered that Victor was the boss's nephew.

Mrs. Patricia Bullard, who lived in the second story flat in the building at 1237 Clayton Street, across the street from the Shell Service Station, testified that about 8:30 on the evening in question, she was leaving with her husband to go to the movies. Because her sister-in-law had mentioned something, she noticed two men sitting in a strange car, a green Chevrolet, parked in front of their residence. The Bullard car was parked behind the Chevrolet, and as they drove off, Mrs. Bullard managed to get a close look at the individual sitting on the driver's side. The next day, she identified the driver as Victor at a police lineup, but could not identify the

taller person on the passenger side. Miss Eubanks, who lived in the flat above the Bullards, also saw the two men in the Chevrolet from her window. She first noticed the car at 8:30 p. m. as she passed on her way to the filling station to buy some cigarettes. The car was still there when she got back, about 8:45 p. m. Just about that time, she saw the two men get out of the car and walk to the service station. One of the two men was fairly tall and the other somewhat short. She saw the two men meet the attendant and follow him into the back room. She was distracted for a moment by one of her children and when she looked back, the two men were hurriedly leaving the station and driving off in their car. It was then about 8:50 p. m.

Bradley Bostick, a friend of Victor's, testified that he had met Victor about 9:30 p. m. on the evening of March 13, in a cafeteria on Sixth Street. The two had coffee and Victor told him he was nervous because the police were after him because he and an unspecified companion had robbed a station where his brother used to work. Victor also mentioned he had hit the attendant over the head because he did not have any string to tie him up.

Victor was arrested on March 14, 1960, and William on March 25. A search of William's room turned up two revolvers, one of which was similar to the weapon used in the robbery. The only defense of both appellants was alibi. Victor admitted owning a green Chevrolet like the one described by the other witnesses. About 6 p. m. on March 13, he went to a friend's apartment on Prospect Street and changed clothes. He then visited his friend, Charley Graham, at 160 Eighth Street, until about 8:30. After that, he parked his car at a parking lot on Mission Street between Sixth and Seventh, went to the Leader Lunch cafeteria on Sixth Street, and had coffee with Bostick. Victor told Bostick he was nervous because he had left Camarillo State Hospital without permission and was afraid the police were looking for him. After leaving the café, he registered at the Baldwin Hotel on Sixth Street about 9:15 or 9:30. The hotel clerk fixed the time of registration at about 9:16 p. m. Victor then went to Oakland with another friend, Spencer Oakley; Victor also testified that he had been at his uncle's service station on the day before [Saturday, March 12]; that he was in fact A.W.O.L. from the Camarillo State Hospital, and that he had not seen his brother, William, at all on Sunday, March 13, although he was supposed to meet him at Foster's around 7 p. m.

William testified that he had spent the early part of the evening unsuccessfully looking for Victor and telephoning to arrange a meeting at the Foster's near Sixth Street. Thereafter, William rode around on a bus driven by his roommate, Douglas Windsor. He left the bus at 29th and Valencia Streets and walked to the home of a friend, Mrs. Venice Clark, at 1533 Valencia Street. He arrived about 8:45 p. m. and spent the entire evening at Mrs. Clark's until about 1:20 a. m. When he arrived at the house, Mrs. Clark was not there, but several of her children were. Mrs. Clark arrived about 9:10 p. m. One of Mrs. Clark's children testified that William had arrived at the home during the Ed Sullivan show but also indicated that his mother had reminded him of what happened that evening. William stated that he had not seen his brother, Victor, since March 7, and that the revolvers found in his room both belonged to his roommate, Douglas Windsor. The day after William's arrest, the police talked to Windsor who denied ownership of the weapons.

No issues relating to the sufficiency of the evidence are raised on appeal, and in the light of the facts, we think there can be no question that there is ample support for the verdict. As we indicated above, all the issues raised on appeal relate to the denial of a fair trial. The main argument of both appellants is that they were denied the effective aid of counsel assured by section 13 of article I of the State Constitution and the Sixth Amendment to the United States Constitution. They argue that they were deprived of their right to the undivided assistance of counsel of their own choice, as they were both represented by the same public defender and that because of the conflict of interest between them, the court should have either appointed separate counsel to defend each of them or should have ordered a severance of their joint trial. While the record does not indicate any diversity of interest in the sense of any factual inconsistency, we agree that this is not the sole or necessarily controlling consideration, as the additional burden of representing another party may impair counsel's effectiveness (*Glasser* v. *United States* (1942) 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680]). This is not a case in which a trial court has appointed joint counsel over objection on the ground of diversity of interest (*People* v. *Lanigan*, 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176]) nor was counsel forced on a non-consenting defendant (*People* v. *Robinson*, 42 Cal.2d 741 [269 P.2d 6]). No conflict of interest was brought to the attention of

the trial court or motion for a severance nor request for a continuance to obtain counsel made before or during the trial. Under similar circumstances, our Supreme Court has indicated that such failure amounts to a free and intelligent waiver of the right to representation (*People* v. *Ingle,* 53 Cal.2d 407, 417 [348 P.2d 577]). The record indicates that when the appellant, William Sprinkle, requested a continuance, after the conclusion of the case, he was given ample time to consult other counsel. The record shows that each of the appellants was ably represented by counsel. There is, therefore, no merit in the appellants' first contention.

The next contention is that the inability of the public defender's office to locate their two alibi witnesses, Charley Graham and Douglas Windsor, amounted to a denial of the appellants' constitutional right to compel the attendance of witnesses. Appellants contend that they were afforded an inadequate defense because their trial counsel, the public defender, did not zealously seek out these alibi witnesses. However, the record indicates that the failure of the witnesses to appear was not due to any lack of diligence on the part of the public defender's office. Victor's witness, Charley Graham, was apparently hiding when the public defender's office unsuccessfully attempted to subpoena him. William's witness, Douglas Windsor, was in Los Angeles and William stated he did not know his address and so advised his counsel. Under these circumstances, appellants' argument is spurious.

The next contention is that the trial court unduly influenced the jury's verdict by giving the jury the impression that William's testimony was not trustworthy. This contention is equally spurious as the record reveals that the following ensued: after submission of the case, the jury returned and requested the re-reading of certain testimony, including William's, as to his whereabouts between 6:30 and 8:30 p. m. After pointing out that all of William's testimony dealt with this, the court asked the jury to decide whether they wanted to hear all of William's testimony read or whether they would be satisfied with specific portions thereof. The court said: ''Now, unless you can pinpoint the request as to William Sprinkle's testimony any finer, we will have to read it all, and we will do that if you wish it, if it is important in your deliberations. Or, do you want to go back to the jury room for a minute and see if you can pinpoint it a little better? Because, you see, our problem is this, the witness comes on and he testifies on direct examination, and then usually some or

most of the subject matter on direct examination is gone over again on cross-examination. It may be the same and it may not be the same; and then there is redirect examination sometimes on the same subject matter. Now, that is our problem. We just cannot give you what the witness last said about that subject, or what the witness first said about the subject. We will have to give it all to you. And in the meantime, the reporter can get his notes out and if you feel that it is important enough, or you cannot narrow it down any more, we will read it all. FOREMAN WISE: I think we will go back and discuss it in the jury room, your Honor. THE COURT: All right. And we will just wait here and will you let us know one way or the other in about five minutes? FOREMAN WISE: Yes, your Honor.'' Apparently, the jury decided it did not wish to re-hear all of William's testimony. The record indicates that shortly thereafter, they returned with their verdict. Appellants erroneously argue that this is an instance of mandatory reinstruction under section 1138 of the Penal Code. We cannot agree as we can see absolutely nothing which would indicate that these comments of the trial court could in any way be interpreted as having prejudiced the jury against the appellants.

 Finally, appellant, William Sprinkle, contends that the trial court erred in denying his motion for a new trial. His motion was based on Victor's confession, which stated that Victor and Spencer Oakley had committed the robbery in question. The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court. It is well settled that such motions are looked upon with disfavor and an appellate court will not interfere except on a clear showing of abuse of discretion by the court below (*People* v. *Greenwood*, 47 Cal.2d 819-822 [306 P.2d 427]). The record indicates that Victor made this confession to William in a letter dated July 15 [after Victor had been sentenced]. The matter was made known to the trial court on July 18. At this time, William's motion for a new trial had been presented and denied. The district attorney explained to the court that the matter had been investigated and it appeared that Victor repudiated his purported confession. Nevertheless, the trial court examined the letter at William's probation hearing on July 25, and denied a motion for a new trial based on the alleged confession pointing out that Victor had been a witness at the trial and subject to cross-examination. Furthermore, it has long been

the law that in a situation like this one, where a codefendant could have been examined at the trial, a subsequent statement of the codefendant which tends to exonerate the other defendant is not the kind of newly discovered evidence which will support a motion for a new trial (*People* v. *Jefferson,* 47 Cal.2d 438 [303 P.2d 1024]; *People* v. *Del Prado,* 49 Cal. App.2d 597 [122 P.2d 76]). There is, therefore, absolutely no merit in this final contention.

Judgments of conviction and orders denying the motions for a new trial are hereby affirmed.

Shoemaker, J., and Agee, J., concurred.