[Crim. No. 7600. Second Dist., Div. Three. Aug. 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM VICTOR ROGERS, Defendant and Appellant.

Virgil V. Becker, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—Charles B. Byrd and the appellant Rogers were accused by information of possession of heroin in violation of section 11500 of the Health and Safety Code and, in a second count, of possession of marijuana in violation of section 11530 of that code. In a trial by jury, in which both defendants were represented by the public defender, the appellant and his codefendant were found to be guilty as charged. The present appeal is from the judgment.

A summary of the evidence will be given. William H. Kaskey, a police officer of the City of Los Angeles assigned to the narcotics division, testified that on September 20, 1960, at approximately one o'clock in the morning, he participated in the arrest of the appellant Rogers and his codefendant

Byrd in a residence located at 1332 East 142d Street in the County of Los Angeles. Officer Northrup was with him. The witness knocked on the door and it opened. He saw Byrd inside the house. The officer exhibited his badge to Byrd and stated, ''We are police officers.'' Byrd said that he lived there. The officer then asked if they might enter and Byrd replied, ''Yes, it's all right with me; come on in.'' The officers entered. Rogers was sitting in a chair in the living room. Rogers wore no shirt except an undershirt. The witness, who had been engaged in narcotic law enforcement work since 1947, saw on both of Rogers' arms numerous marks of the kind that are caused by the injection of a hypodermic needle. Some marks appeared to be of recent origin and one appeared to have been made ''probably within an hour or two hours'' of the time of the officer's examination. The pupils of Rogers' eyes were pin-pointed, a condition which characteristically follows the use of an opiate. The officer told Rogers that it appeared to him that Rogers was using quite a bit of heroin. Rogers replied, ''No, I'm not using very much; I just use occasionally. I am really not using a lot of stuff.'' The witness informed Rogers that he was under arrest for violation of the narcotics laws. Part of the officer's testimony was as follows: ''Q. After placing the defendant Rogers under arrest, what did you next do? A. I next asked the defendant Rogers where he lived. 'Where is your room? Where do you stay, here? How long have you stayed here?' He said, 'Well, I have been living here about four months, and I live in that bedroom,' indicating a bedroom situated off the living-room, and adjacent to the bath.'' The officer and Rogers went into the bedroom and the officer found ten brown-paper wrapped cigarettes in a sack which was in a closet. On the floor behind a dresser were found three eyedroppers, a syringe and a hypodermic needle. As to the cigarettes, Rogers said, ''Well, you found them in my room, so I guess they're mine.'' But he denied that he knew anything about the other articles.

When the officer and Rogers reentered the living room, the officer found five more brown wrapped cigarettes on the floor at a point about 10 feet in distance from the bedroom door. The officer then went alone to the garage; later another officer joined him. In the garage was found a container in which was a ''brownish'' powder. A similar powder was in a jar. In a bag was a green, leafy substance. The articles were found under some old clothing. Near these articles was currency con-

tained in a brown paper sack, which money, the officer believed, was in the amount of $185.

Officer Northrup also testified. After Rogers was placed under arrest, the officers asked Rogers if they could look around the bedroom occupied by him and Rogers said that they could. He and Sergeant Kaskey took Rogers into the bedroom. Rogers said that the clothing in the closet was his. He said that the cigarettes found in the living room did not belong to him. About the time the articles were found in the garage, Rogers said, "I knew you were going to find the heroin out in the garage because that is where Charlie Byrd keeps it stashed, out in the garage." When shown the items which were found there, Rogers said that they were not his. At the police station $337 was removed from Rogers' pocket. When asked where he got the money, Rogers did not answer.

It was stipulated that it would be deemed that a forensic chemist had been called and had testified that he had examined the cigarettes and the sack containing green, leafy material and that, in his opinion, the articles contained marijuana, and that he had further testified that he had examined the powder in the jar and in the other container and that, in his opinion, it was heroin and that it was 17.2 grams in amount. The articles were received in evidence without any objection being made by the public defender on behalf of either defendant.

The defendant Byrd testified in his own behalf. He said that on the date of his arrest his place of residence was on 49th Street. He went to the premises on 142d Street about 6:30 or 7 o'clock in the evening. The tenants of the house were Mr. and Mrs. Burnett who had been there about three or four months. Byrd had previously lived there but moved away around July of 1960. Later in the evening Rogers was in the house. When the officers arrived, Byrd was not "quite drunk," but had been drinking "pretty heavy." He did not tell the officers he lived there. He had not been in the garage for about a year and had stored nothing there. He kept his boat in the driveway on the 142d Street premises, where it was on the night of his arrest.

The defendant Rogers testified in his own behalf. He had known Byrd for eight or nine years. On the date of his arrest Rogers was living on 46th Street. Since about April, on a number of occasions he had "spent a night or two" in the house where he was arrested. During September he spent about three nights there. On September 19, he came to the house in the hour before midnight. He had some clothes there

which he used when he went fishing; they were in a closet in the bedroom. When the officers arrived he was in the back bedroom. Officer Northrup told him to come into the living room and he did. Rogers wore no shirt. Officer Northrup examined his arms with the aid of a flashlight. He was arrested. Officer Northrup asked him if he would give him permission to search the house. He told the officer he would not because he did not live there and did not own the house. Officers Northrup and Kaskey then went into the bedroom and returned with some articles. It was not his bedroom. He told the officers the cigarettes were not his. He had never seen the cigarettes before. Aside from fishing tackle, Rogers kept nothing in the garage. He did not see what the officers said they had found in the garage until the preliminary hearing. He did not know what was in the containers. He had neither marijuana nor heroin in his possession on September 19 or September 20. The money in his pocket came from his savings and gambling.

In the consideration of the appellant's contentions, this court cannot reweigh the evidence but must view it in the light most favorable to the respondent. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

The officers had no search warrant and no warrant for the arrest of Byrd or Rogers. However, if someone with apparent authority consents to an entry into a residence, and the entry is made in good faith, it is not unlawful. (*People* v. *Howard,* 166 Cal.App.2d 638, 651 [334 P.2d 105].) In the present case Officer Kaskey testified that Byrd said that he lived in the house and that the officers could come in. That evidence was sufficient to support a determination that the officers' presence in the front room of the house was lawful.

In view of the appellant Rogers' statement as to his use of heroin, the fresh needle marks on his person, and the appearance of his eyes, there was a valid ground for his immediate arrest. (*People* v. *Rios,* 46 Cal.2d 297, 298-299 [294 P.2d 39]; *People* v. *Smith,* 141 Cal.App.2d 399, 403 [296 P.2d 913].) The appellant made no objection in the trial court to the introduction in evidence of the articles found on the premises. (See *People* v. *Richardson,* 51 Cal.2d 445, 447 [334 P.2d 573].) But, in any event, his contention that the officers engaged in an unlawful search and seizure cannot be sustained. The search of the bedroom which Rogers said he occupied was proper since it was incident to a lawful arrest.

(*People* v. *Elliott,* 186 Cal.App.2d 178, 183 [8 Cal.Rptr. 795].)
No consent to the search of the garage was given by anyone.
The question presented is whether it was warranted on the
ground that it was incident to a lawful arrest. Guidance in
the resolution of that question is found in *People* v. *Smith,* 166
Cal.App.2d 302 [333 P.2d 208]. In that case the defendant
conceded that his arrest was legal and that the search of his
person and his living quarters was a search reasonably inci-
dent to his arrest. However, he contended that the search of
a garage, wherein marijuana was found, was not reasonably
incident to the arrest. In rejecting that contention the court
said (166 Cal.App.2d, at pp. 305-306) : "It should be empha-
sized that the sole question here presented is whether it was
reasonable for the officers to search the garage after the search
of the appellant's person and living quarters had failed to
uncover the narcotics for which they were searching. In the
appellant's room the officers had found cigarette papers,
debris, and seeds which naturally would have tended to
confirm the suspicions raised by the conversation they had
overheard. It was entirely reasonable for the officers to infer
that appellant probably had access to and might utilize the
garage as a hiding place, since he owned an automobile and
was a tenant in the building. The officers were not conducting
an exploratory search for what might be uncovered (cf.
*People* v. *Mills,* 148 Cal.App.2d 392 [306 P.2d 1005] ; *Harris*
v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399])
but were searching for marijuana which they had good reason
to believe was hidden somewhere on the premises, in the
appellant's room or in an outbuilding to which he had access.
(Cf. *Sayer* v. *United States,* 2 F.2d 146.)

"In *People* v. *Wasco,* 153 Cal.App.2d 485, 487 [314 P.2d
558], the officers arrested the defendant in his rented room.
Thereafter, the officers searched for and discovered contra-
band in a washroom at the end of the hallway on which the
defendant's room faced, and such a search was held reason-
ably incident to a lawful arrest. In the instant case, as in
*Wasco, supra,* the reasonableness of the search of an area
beyond the immediate living quarters of the defendant rests
on the fair inference that his control and activities extended
to areas to which, as a tenant, he had the rights of access
and use."

In the present case the statement made by the appel-
lant prior to his arrest as to his use of narcotics, the marks
on his arms, the appearance of his eyes, together with the

finding of the eyedroppers, syringe and hypodermic needle in his bedroom, furnished a reasonable basis for a belief on the part of the officers that heroin was probably present somewhere on the premises. In view of the apparently unrestricted use of those premises by the appellant, it was reasonable for the officers to infer that he had access to the garage and might make use of it as a hiding place. Consequently, under the circumstances of the case the search thereof was reasonably incident to the valid arrest. ■ Even though the officers might have procured a search warrant, the relevant test is not whether it was reasonable to procure a search warrant, but whether the search was reasonable. (*People* v. *Montano,* 184 Cal.App.2d 199, 205 [7 Cal.Rptr. 307].)

■ In a prosecution for the unlawful possession of narcotics, it is necessary to prove that the accused had actual or constructive possession of the contraband and knowledge of its presence and narcotic nature. But these essential facts may be established by circumstantial evidence. (*People* v. *Stanford,* 176 Cal.App.2d 388, 390 [1 Cal.Rptr. 425].)

■ The finding of marijuana in the appellant's bedroom under the circumstances disclosed in the record gave sufficient support to the conviction under the second count of the information. (*People* v. *Elliott, supra,* 186 Cal.App.2d 178, 185; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 340 [244 P.2d 750].) ■ With respect to the heroin found in the garage, reference has already been made to the evidence pointing to the use of that narcotic by the appellant. Access to the garage was shown by his testimony that he kept fishing tackle there. His knowledge of the presence of heroin in the garage was indicated by his statement to Officer Northrup that he knew they were going to find heroin there because that was "where Charlie Byrd keeps it stashed." ■ The governing law is set forth in *People* v. *Hurst,* 183 Cal.App.2d 379 [6 Cal.Rptr. 483], at page 387, as follows: "The narcotics need not be found on the person of the defendant; it is sufficient if they are deposited in a place under the possession and control of the accused. Exclusive possession of the premises is not necessary nor is physical possession of the drug of the essence. (*People* v. *Robarge,* 151 Cal.App.2d 660, 668 [312 P.2d 70].) ■ Evidence of physical possession by the defendant's agent or by any other person when the defendant has an immediate right to exercise dominion and control over the narcotic has been held sufficient to sustain a conviction under section 11500 of the Health and Safety Code. (*People* v.

*MacArthur*, 126 Cal.App.2d 232, 236-237 [271 P.2d 914].)''

 The evidence in the present case reasonably warranted the inference that the narcotics found in the garage were in the appellant's possession, although that possession may have been a joint possession with Byrd, and that the presence and character of the narcotics were known to the appellant. (Cf. *People* v. *Dominguez*, 191 Cal.App.2d 704, 706-707 [12 Cal.Rptr. 910].)

In the brief filed on behalf of the appellant it is stated: ''The instructions given in the instant case appear to be defective and presented prejudicial error against the defendant Rogers, and the jury was not properly instructed with respect to the question of knowledge and possession to thoroughly give the defendant Rogers the benefit of any reasonable doubt if any could be found.'' Reference is not made to any specific instruction. The record, as augmented by this court on its own motion, shows that the jury was instructed in the language of CALJIC instruction 703 as follows: ''Within the meaning of the law, a person is in possession of a narcotic when he knowingly has the narcotic under his dominion and control, and, to his knowledge, it either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him, provided, however, that two or more persons may have joint possession of a narcotic if jointly and knowingly they have the dominion, control and exclusive possession I have described.'' No error has been shown. (See *People* v. *Anders*, 167 Cal.App.2d 65, 68-69 [333 P.2d 854].)

 The final matter to be considered is the appellant's contention which is expressed as follows: ''In this matter the defendant Rogers and the defendant Byrd were separate defendants with separate legal rights involved, both charged with similar offenses, yet where such a conflict of interests may arise, one individual counsel could not properly and effectively present a defense as to both of these defendants, more particularly where the question of possession of narcotics is involved. . . .'' But the only portion of the record which shows any dissatisfaction of the appellant with the representation afforded him by the public defender relates to what occurred after the last witness had testified. In the absence of the jury, the public defender stated to the court that the appellant Rogers wanted Officer Northrup recalled as a witness

for further questioning, apparently on the issue of search and seizure. It was the judgment of the public defender that there was no basis for further inquiry as to that matter. The appellant also believed that his rights had been infringed by the failure to produce an informer, but the public defender believed that there was no "necessity for either naming or producing the informer." The trial court advised the appellant that he should follow the advice of his attorney. The record discloses no effort at any time on the part of the appellant to obtain the appointment of separate counsel. He was ably represented throughout the trial and was not prejudiced by reason of the fact that the public defender also appeared for Byrd. There is no merit in the contention. In deciding a similar question presented in *People* v. *Sprinkle,* 201 Cal. App.2d 277 [19 Cal.Rptr. 804], the court stated at pages 281-282: "The main argument of both appellants is that they were denied the effective aid of counsel assured by section 13 or article I of the State Constitution and the Sixth Amendment to the United States Constitution. They argue that they were deprived of their right to the undivided assistance of counsel of their own choice, as they were both represented by the same public defender and that because of the conflict of interest between them, the court should have either appointed separate counsel to defend each of them or should have ordered a severance of their joint trial. While the record does not indicate any diversity of interest in the sense of any factual inconsistency, we agree that this is not the sole or necessarily controlling consideration, as the additional burden of representing another party may impair counsel's effectiveness (*Glasser* v. *United States* (1942) 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680]). This is not a case in which a trial court has appointed joint counsel over objection on the ground of diversity of interest (*People* v. *Lanigan,* 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176]) nor was counsel forced on a non-consenting defendant (*People* v. *Robinson,* 42 Cal.2d 741 [269 P.2d 6]). No conflict of interest was brought to the attention of the trial court or motion for a severance nor request for a continuance to obtain counsel made before or during the trial. Under similar circumstances, our Supreme Court has indicated that such failure amounts to a free and intelligent waiver of the right to representation (*People* v. *Ingle,* 53 Cal.2d 407, 417 [348 P.2d 577]). . . . The record shows that each of the appellants was ably represented by

counsel. There is, therefore, no merit in the appellants' first contention.''

The judgment is affirmed.

Shinn, P. J., concurred.

FILES, J., Concurring and Dissenting.—With respect to count II, I concur. On count I, I would reverse the judgment on the ground that the evidence was insufficient to show that appellant possessed the heroin which was found in the garage.