[Crim. No. 4640. First Dist., Div. One. June 28, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES LEE WILLIAMS, Defendant and Appellant.

Patricia C. Remmes, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Appellant appeals from his conviction of robbery in the second degree in violation of the provisions of section 211 of the Penal Code following his trial by jury.[1]

In the late evening of December 19, 1963, and the early morning of December 20, 1963, one Ernest Gonzales, a draftsman for the City and County of San Francisco, was cruising in his car in the area of McAllister and Webster Streets in San Francisco. At that location he stopped and had a conversation with Joan Williams, codefendant in this case. Gonzales had seen Joan Williams approximately two weeks prior to this meeting at which time he had approached her with a proposition to engage in an act of prostitution. Gonzales testified that on a previous occasion he had given money to

---

[1]The notice of appeal recites that ''defendants appeal.'' (Italics added.) The notice is executed by appellant in propria persona. No brief has been filed on behalf of his codefendant. In the absence of evidence of authority or subsequent ratification, the notice is treated as applying solely to this appellant.

Joan Williams to perform an act of prostitution, but appellant had appeared and the transaction was called off without Joan Williams returning Gonzales' money.

On the night in question Gonzales picked up Joan Williams, and she agreed to perform the act which he had previously paid her for. They drove around a few blocks in the area of McAllister and Webster before parking the car on Webster near Golden Gate Avenue. Gonzales placed his wallet under the front seat of the car before he alighted and then followed Joan Williams into a passageway near the rear of a building. He followed her there on the basis of her representation that she had a place to perform the promised act.

The passageway was of considerable length and very dark, and as Gonzales proceeded down it he suddenly recognized appellant standing against the wall. Upon being asked by appellant what was going on, Joan Williams stated she was "going to make something right by him" (indicating Gonzales), and then stated that the "police are across the street." Appellant concurred in this statement after going to the front door and looking. After waiting for a short time, Gonzales decided to leave but was prevented from doing so by appellant.

According to Gonzales, appellant put his foot against the door and pushed Gonzales back against the wall. He then forced Gonzales to move further back along the wall, pulled his hand out of his pocket and shoved it against Gonzales' throat. Gonzales testified that while he did not see any object in appellant's hand because his chin was pushed back, that the object had a sharp point and in fact left a small laceration on his throat.

Gonzales was then told to raise his arms and hold them out from his sides, following which codefendant Joan Williams and appellant rifled his pockets. They took the small amount of money which he had on him plus his car keys. Appellant and codefendant then left in Gonzales' 1962 Oldsmobile. Gonzales left the passageway as they were driving off, and ran after the car for a block or so until he was pushed away from it. He testified that at no time did he give them permission to take his car or his money.

Appellant and codefendant proceeded to Los Angeles in the car, discovering on their way Gonzales' wallet under the seat of the car. It contained cash and a gasoline credit card. They then indulged in a series of purchases of tires, batteries and other accessories which were acquired by use of the credit

card and sold. They also sold a movie projector and several reels of film which were in the car at the time.

Appellant and his codefendant denied use of force or fear to get Gonzales' keys. According to their testimony they perpetrated a form of theft on Gonzales known as the ''carpet pad'' or ''paddy hustle.'' In their version, Joan Williams lured Gonzales to the hallway of an apartment house, at which point appellant confronted them posing as the apartment manager. He then informed Gonzales that he should leave his valuables in his custody for safekeeping, following which both appellant and codefendant disappeared from the scene. The accuseds' version of the affair, in addition to denying any use of force or fear, also differed from that of the victim in respect of the place of the transaction—an upstairs hallway, rather than the passageway described by the victim—and in that they denied going through his pockets and that he chased the car.

Appellant makes the following contentions: That evidence of his extrajudicial statements was improperly admitted; that he was deprived of his constitutional right to have counsel appointed for his defense; that he was denied equal protection of the law; that the court's instructions and comments on the evidence were improper; that the trial court abused its discretion in denying his motion for commitment as a narcotic addict pursuant to the provisions of section 6451 of the Penal Code; that the trial court abused its discretion in denying his motion for a determination of his sanity at the time of trial pursuant to the provisions of section 1368 of the Penal Code; that the court erred in denying his motion to disqualify the judge presiding at the trial; and that the evidence is insufficient to sustain the conviction.

In the interests of clarity these points will be discussed in the order in which they arose in the record.

*Appellant was not deprived of his*
*constitutional right to counsel*

■ Appellant relies on *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733] as establishing his unquestionable right to the assistance of counsel in his defense; and on *People* v. *Robinson* (1954) 42 Cal.2d 741, 745-748 [269 P.2d 6], *People* v. *Donohoe* (1962) 200 Cal. App.2d 17, 22-30 [19 Cal.Rptr. 454], and *People* v. *Kerfoot* (1960) 184 Cal.App.2d 622, 637-645 [7 Cal.Rptr. 674] for the proposition that he is denied the effective assistance of counsel when he is required to accept representation by one

counsel jointly with a codefendant where the interests of the several defendants may be conflicting. (See also *People* v. *Douglas* (1964) 61 Cal.2d 430, 436-439 [38 Cal.Rptr. 884, 392 P.2d 964].)

The facts reflect that an information charging the defendants jointly with robbery was filed on February 19, 1964. The defendants appeared with the assistant public defender and were arraigned on February 21. At that time a clause of the information charging that the defendants were armed with a deadly weapon apparently was amended to show that the defendants were armed with a knife rather than a pistol, as originally charged. On the 26th, with representation by the public defender, pleas of not guilty were entered and the matter was set for trial on March 9. The first suggestion that the appellant was dissatisfied with representation by the public defender ensued when the matter was called for trial on March 12, to which date it had been regularly continued for trial along with an earlier charge.[2] At that time appellant announced he was dismissing the public defender and that he wished to conduct the defense of himself and his ''wife.'' His codefendant joined in this move. The court continued the matter to March 16 for trial, instructed the defendants concerning securing witnesses and ordered that a copy of the Penal Code be furnished appellant.

The following morning the parties were brought before the bench on the court's own motion. When it appeared that they were not legally married, the court advised them that appellant could not represent his codefendant. The question of whether or not counsel was desired was reopened, and each defendant having expressed a desire for counsel, and having indicated that it was agreeable to have the same counsel and that there was no conflict of interest between them, one attorney was appointed by the court to represent both defendants. The court explored the question of conflict of interest with the prosecutor and the representative of the public defender's office who had represented the defendants when they were arraigned and when they entered their plea. The latter stated that she thought there was a possibility of conflict. The court again reviewed the names of the witnesses to be called by the People, requested the prosecution to furnish all discoverable matters to the attorney for the defendant, and continued the

---

[2]That charge, violation of section 245 of the Penal Code, was not pursued further in connection with the instant offense.

matter to March 16 for setting. The matter was then regularly set for trial on March 18 with the consent of the court-appointed attorney.

On the latter date appellant for the second time expressed a desire to dismiss his attorney and requested a continuance. The court denied the continuance. After questioning the defendant at length out of the presence of the jury, the judge concluded that the defendant had made an intelligent waiver of counsel, and ordered that he represent himself. After the impanelment of the jury, the court reopened the subject. Defendant then expressed a desire to be represented by the court-appointed attorney, and the latter was appointed and acted with diligence and skill for defendant throughout the trial. Any question of conflict, theretofore waived personally by defendant, had also been laid to rest by the statements of appointed counsel that no conflict existed in the position of the two defendants.

This case falls short of the principles upon which appellant relies. When he first dismissed the public defender he did not assert any conflict of interest with his codefendant, but sought to represent their joint interests. No reason was suggested for his dissatisfaction and he was properly granted a continuance to prepare for trial. The following day he indicated that his dismissal of the public defender was predicated upon his belief that the substitution of another deputy public defender was without sufficient time for preparation for trial. He expressly disclaimed any conflict of interest and assented to the appointment of one attorney to jointly represent him and his codefendant.

On the second occasion, when the case was called for trial, appellant expressed no cause for the dismissal of the court-appointed attorney other than that he ''didn't want to be tried'' and that he wanted the trial postponed. His final acceptance of the court-appointed attorney was unconditional and without any expression of possible conflict of interest. The whole record reflects that defendant's tactics were designed to secure a delay and possible separate trial, and that the court and the counsel ultimately accepted, took every step necessary to protect defendant's rights throughout the preliminary proceedings and the trial. In fact no prejudice to appellant from the joint representation has been suggested on appeal. Under these circumstances there was no denial of effective right to counsel. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 416-417 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Odom*

*(Cal.App.) 43 Cal.Rptr. 520; *People* v. *Byrd* (1964) 228 Cal.App.2d 646, 648-650 [39 Cal.Rptr. 644]; *People* v. *Rogers* (1962) 207 Cal.App.2d 261, 269-270 [24 Cal.Rptr. 341]; *People* v. *Sprinkle* (1962) 201 Cal.App.2d 277, 281-282 [19 Cal.Rptr. 804]; and see *People* v. *Douglas, supra,* 61 Cal.2d at p. 438; *People* v. *Kroeger* (1964) 61 Cal.2d 236, 244-245 [37 Cal.Rptr. 593, 390 P.2d 369].)

*The trial court did not err in denying appellant's motions suggesting disqualification or change of venue*

 Upon the filing of the information the case was assigned to the department in which all subsequent proceedings took place. On March 18, the day ultimately set for trial, after the denial of a motion for a continuance made by the appellant personally, but before he had suggested the dismissal of his court-appointed attorney, the appellant personally made "a motion, . . . for a change of venue on the grounds that I find this Court very biased and prejudiced." This motion was denied. Following the dismissal of his attorney and before the appellant's request for and acquiescence in his reappointment, he renewed the motion, once personally and again with the assistance of counsel. On the first occasion it was denied as a motion for change of venue, and on the second it met like fate when interpreted as a motion that the judge disqualify himself.

It is not urged on appeal that there was any ground for, or compliance with, the formalities requisite for change of venue. (See Pen. Code, § 1034.) It is asserted that appellant had a right to disqualify the judge under the provisions of sections 170, subdivision 5, and 170.6 of the Code of Civil Procedure, and that compliance with the formalities required by said sections should not be required because the appellant was representing himself. No actual bias or prejudice has been urged nor does any appear from the record. Under these circumstances it is unnecessary to speculate as to whether, or under what circumstances, the statutory formalities may be waived. The trial court properly denied the oral motions. (*People* v. *Ashley* (1963) 59 Cal.2d 339, 359-360 [29 Cal.Rptr. 16, 379 P.2d 496]; and see *McClenny* v. *Superior Court* (1964)

---

*A hearing was granted by the Supreme Court on May 26, 1965, and the cause was retransferred to the District Court of Appeal, Second Appellate District, Division Two, for further consideration in the light of *Griffin* v. *California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. The subsequent opinion of the District Court of Appeal, filed August 31, 1965, is reported in 236 Cal.App.2d —— [46 Cal.Rptr. 453].

60 Cal.2d 677, 683 [36 Cal.Rptr. 459, 388 P.2d 691]; and *People* v. *Boyden* (1960) 181 Cal.App.2d 48, 51-52 [4 Cal. Rptr. 869].)

*The trial court did not err in denying appellant's motion under Penal Code section 1368*

██ During discussion in chambers on the morning of the trial the trial judge, in commenting on appellant's statements as to his marital status said, "Some people might think that mentally there is something wrong. . . ."[3] Thereafter with the assistance of counsel, but before the latter's reappointment, appellant moved the court under section 1368 of the Penal Code suggesting present insanity and requesting the appointment of a psychiatrist. The court entertained no doubt of his sanity at the time and denied the motion.

The "doubt" referred to in section 1368 of the Penal Code is not what "some people" might think, but is the state of mind of the trial judge. Unless the circumstances show as a matter of law that the trial judge had or should have had a doubt as to the sanity of the accused his denial of a hearing should be upheld. (*People* v. *Kroeger, supra,* 61 Cal.2d 236, 243-244; *People* v. *Ashley, supra,* 59 Cal.2d 339, 361-363; *People* v. *Gomez* (1953) 41 Cal.2d 150, 156-159 [258 P.2d 825].)

*Appellant was not denied equal protection of law*

██ Appellant alleges discrimination because he and his codefendant were prosecuted for robbery, whereas the victim was not charged with adultery, conspiracy to commit acts of prostitution, or the like. The irrelevancy of this claim is obvious.

---

[3]The full conversation on this subject is as follows: "THE COURT: Now, I asked you the other day, I think, that if you and Mrs. Williams were married. It is a common law relationship, I take it; is that not right? DEFENDANT JAMES WILLIAMS: Yes sir. THE COURT: There has been no ceremony? DEFENDANT JAMES WILLIAMS: Well, she has been my wife since the World began. THE COURT: I see. Would you explain to us just what you mean by that; what did you mean by that 'since the World began'? DEFENDANT JAMES WILLIAMS: Well, it would seem as though it would speak for itself. MR. DAVIS: No ceremony performed. THE COURT: Well, some people might misunderstand the implications of what you just said. Some people might think that mentally that there is something wrong and that is why I asked if you would just explain what you mean, explain what you mean when you say that she has been your wife since the World began. However, you may explain it or not, if you wish. DEFENDANT JAMES WILLIAMS: Well, I will remain mute. I have said what I said."

*The admission in evidence of appellant's extrajudicial statements does not require a reversal of his conviction*

At the trial officers of the San Francisco Police Department testified as to statements made by appellant and his codefendant following their arrest in Los Angeles. In the first interview with appellant in Los Angeles he admitted using the victim's credit card which he found in a wallet under the seat of the victim's car, and stated that he obtained the keys to the car through a "carpet pad." Following his return to San Francisco in two or three conversations with the officers he admitted that he took the victim's automobile and property, and that he had acquired the keys and property through a "paddy hustle"; but emphatically denied the use of force or fear as related by the victim. Similar recitals resulted from two interviews with the codefendant.[4]

Appellant contends that the evidence of his statements was inadmissible, first, because of principles which, subsequent to the filing of briefs, found full expression in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; second, because they were obtained during a period of illegal detention; and, third, because without corroboration the testimony of the victim could not serve as proof of the corpus delicti.

The record shows that appellant's original statement was made shortly after his arrest in Los Angeles. ▮ Insofar as further statements may have been made during a period of detention in violation of the provisions of section 8 of article I of the state Constitution or of section 825 of the Penal Code they are not rendered thereby *per se* inadmissible. (*Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 9-11 [291 P.2d 929]; and see *People* v. *Hall* (1964) 62 Cal.2d 104, 108, fn. 6 [41 Cal. Rptr. 284, 396 P.2d 700].) ▮ The corpus delicti was established by the testimony of the victim. The fact, if it be such, that the victim might have been a coconspirator or accomplice in an offense of prostitution or adultery, does not make him such in the offense of robbery of his own person. In any event, the testimony of appellant and his codefendant fur-

---

[4]The jurors were properly admonished on several occasions that nothing contained in the extrajudicial statement of one defendant could be used against the other; nor were the statements of appellant's codefendant used to impeach the testimony she gave at the trial. (Cf. *People* v. *Underwood* (1964) 61 Cal.2d 113, 124 [37 Cal.Rptr. 313, 389 P.2d 937].) The propriety of the admission of the statements of Joan Williams is therefore not before this court.

nishes substantial corroboration to most of the elements of the crime.

The record reflects, and, insofar as it is silent it must be inferred, that appellant was not advised of his right to counsel or his right to refuse to give any statements. The appellant being in custody as one of the particular suspects of committing the crime with which he was subsequently charged, and the incriminating statements having been elicited in the course of a process of interrogation which lent itself to that end, the admission of such statements was clearly error. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 345-354; and see *People* v. *Modesto* (1965) 62 Cal.2d 436, 443-447 [42 Cal. Rptr. 417, 398 P.2d 753]; *People* v. *Stewart* (1965) 62 Cal.2d 571, 580-581 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Lilliock* (1965) 62 Cal.2d 618, 620-622 [43 Cal.Rptr. 699, 401 P.2d 4]; *People* v. *Hillery* (1965) 62 Cal.2d 692, 710-712 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Schader* (1965) 62 Cal.2d 716, 726-727 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Sears* (1965) 62 Cal.2d 737, 742-743 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 761-762 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Perez* (1965) 62 Cal.2d 769, 774-775 [44 Cal.Rptr. 326, 401 P.2d 934]; *People* v. *Davis* (1965) 62 Cal.2d 791, 795-796 [44 Cal.Rptr. 454, 402 P.2d 142]; *People* v. *Bostick* (1965) 62 Cal.2d 820, 827-836 [44 Cal.Rptr. 649, 402 P.2d 529].)

The question presents itself as to whether this error may be examined to determine whether it caused such prejudice as to require a reversal of the conviction. It is established that a confession of the crime charged is prejudicial as a matter of law, regardless of the state of the other evidence. (*People* v. *Dorado, supra,* 62 Cal.2d 338 at p. 356; *People* v. *Stewart, supra,* 62 Cal.2d at p. 581; *People* v. *Lilliock, supra,* 62 Cal.2d at p. 622; *People* v. *Schader, supra,* 62 Cal.2d at pp. 728-731; *People* v. *Sears, supra,* 62 Cal.2d at p. 743; *People* v. *Bilderbach, supra,* 62 Cal.2d at p. 761; *People* v. *Bostick, supra,* 62 Cal.2d at p. 836.) In the instant case the statements constitute a confession of the included offense of grand theft, but a denial of the robbery with which he was charged and convicted. An examination of the whole record reflects that the principal, if not the sole issue in the case, was whether or not use of force or the fear thereof was present when the victim was relieved of his car keys and the money on his person. Under these circumstances the statements may be treated as something less than a confession, and an examination of the prejudice caused by their admis-

sion is proper. (*People* v. *Hillery, supra,* 62 Cal.2d at p. 712; and see *People* v. *Dorado, supra,* 62 Cal.2d at p. 356.) ▉ The test is whether there is a reasonable probability that the jury would have reached a result more favorable to the defendant if the statements had been excluded. (Cal. Const., art. VI, § 4½; *People* v. *Hillery, supra,* 62 Cal.2d at pp. 712-713; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

▉ If the statements are excluded we have the testimony of the victim, and the testimony of the defendants. The latter, as noted above, is consistent with the admissions contained in the statements in question. If it be assumed that such testimony, both of appellant and his codefendant, was impelled by the erroneous admission of the evidence concerning the statements, it may also be disregarded. (See *People* v. *Davis, supra,* 62 Cal.2d at p. 796.) In that event, the uncontradicted testimony of the victim could hardly have been disbelieved by the jury. Since they accepted his testimony as to the use of force and fear in the face of appellant's denial, it cannot be said that the jury would have reached a result more favorable to defendant if the statements had been excluded and the defendant had rested on his right not to testify.

This case, however, does not parallel *Davis, supra.* In that case the statement constituted the only substantial evidence connecting him with the crime and showing the premeditation necessary for murder in the first degree. His testimony would only support a verdict of second degree murder. Here both the statement and the testimony admit the lesser offense. The situation is analogous to the situation where evidence is improperly introduced of a defendant's offer to plead guilty to a lesser offense. In fact the testimony reflects such an offer by appellant to plead guilty to grand theft but not to robbery. In such case there can be no reversal where no miscarriage of justice results. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 155-157 [32 Cal.Rptr. 44, 383 P.2d 452], and p. 157, Mr. Justice Peters, dissenting, but concurring in the foregoing; *People* v. *Hamilton* (1963) 60 Cal.2d 105, 112-114 and 120-121 [32 Cal.Rptr. 4, 383 P.2d 412].)

On the basis of the foregoing, and under the particular facts of this case, it is concluded that no miscarriage of justice has resulted from the erroneous admission of defendant's extra-judicial statements and that no reversal should be predicated upon such error.

*The evidence was sufficient to sustain the conviction*

■ From what is related above it is clear that the testimony of the victim, if accepted, as it was by the jury, was sufficient to sustain the conviction of robbery in the second degree. Appellant seeks to avoid this obvious conclusion by alluding to the victim as a coconspirator whose testimony requires corroboration. As pointed out above, the contention is ridiculous insofar as the offense charged is concerned.

*The court did not err in its comment on the evidence and*
*in its instructions to the jury*

■ The court charged the jury as to the elements of robbery, the degrees thereof, the duty to find as to the lesser degree in the event a defendant was found guilty of the principal crime but a reasonable doubt existed as to the degree (see CALJIC No. 115 B), the law of included offenses, the elements of theft and the degrees thereof, and the duty to find for the lesser offense if a defendant was found guilty of any included offense, but a reasonable doubt existed as to the particular crime of which he was guilty. (See CALJIC No. 115 A.) Appellant's attack on the last mentioned instruction given as modified to refer to several defendants[5] is answered by *People* v. *Dewberry* (1950) 51 Cal.2d 548 at p. 555 [334 P.2d 852] as follows: "It has been consistently held in this state since 1880 that when the evidence is sufficient to support a finding of guilt of both the offense charged and a lesser included offense, the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense."

■ It is also alleged that the trial judge exceeded the bounds of proper comment upon the evidence. He stated: "Now, from the evidence in this case, including the testimony of the defendants, it appears that the defendants committed either the crime of robbery in the first degree or the crime of robbery in the second degree or the crime of Grand Theft. Now, I have just commented on the evidence in this case." This statement was accompanied by appropriate cautionary language paralleling that found in the first, third and fourth

---

[5]The instruction reads as follows: "If you find either or both defendants were guilty of the offense within the charge of the Information, but entertain a reasonable doubt as to the crime of which either or both defendants are guilty, it is your duty to convict only of the lesser offense."

paragraphs of CALJIC Instruction No. 7, and had been preceded by other instructions setting forth the respective functions of court and jury. There is nothing to suggest that the court exceeded the bounds of proper comment, and no error can be predicated thereon. (Cal. Const., art. VI, § 19; *People v. Friend* (1958) 50 Cal.2d 570, 576-579 [327 P.2d 97].)

*The court did not err in denying appellant's motion under section 6451 of the Penal Code*

At the hearing for decision on appellant's motion for a new trial and for determination of his eligibility for probation and sentence, he made a motion for examination and hearing to determine the propriety of his commitment pursuant to the provisions of section 6451 of the Penal Code as a narcotic addict, or one in imminent danger of becoming one. The trial court denied this motion. Appellant asserts error relying on *People v. Ortiz* (1964) 61 Cal.2d 249 [37 Cal.Rptr. 891, 391 P.2d 163]. In that case there was a failure to exercise the discretion conferred by law because of a misunderstanding of the defendant's status under the law. The case was reversed and remanded to permit the court to exercise that discretion. In this case the court had before it the report of the probation officer, and made its finding against addiction and imminent danger of addiction. The motion was thereupon denied. The probation report and record of the defendant's arrests, which is evidenced by copies in the appendix to the People's brief, which are relied upon by both parties, does not require a contrary finding. These records reflect the appellant's self-serving declarations on this subject, and some arrests on suspicion of violation of the narcotic act, but no conviction since September 1956, when he served 90 days for being under the influence of or addicted to the use of narcotics in violation of section 11721 of the Health and Safety Code. The matter is one within the discretion of the court. (*People v. Ortiz, supra,* 61 Cal.2d 249, 254; *People v. Zapata* (1963) 220 Cal.App.2d 903, 911-913 [34 Cal.Rptr. 171].) Where as here the court has considered the record of the person convicted and exercised its discretion, it will not be disturbed in the absence of a showing of abuse thereof. (*In re Nunez* (1965) 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998].)

There being no reversible error, the judgment is accordingly affirmed.

Sullivan, P. J., and Molinari, J., concurred.